The opinion of the Court was delivered by
Withers, J.
The case being new in the instance, presents *64 the necessity of searching for a principle by which it is to be governed.
We may regard it as though it had been between Twining, whose rights the plaintiffs had, and Edward Platts Jackson, whom the defendant represented. Thus considered it is as follows :
Twining, in common with others, under the eldest grant, was seized, and through operation of law, not otherwise, possessed, of a large parcel of land. Within the boundaries of it Jackson entered and resided for more than seven years, Twining being resident without the State. Jackson had color of title (being a junior grant) for 1000 acres, in the midst of Twining’s. land? though no line of the two grants was identical. In the 6th year of Jackson’s residence within the lines of his color of title, Twining had partition with his co-tenants. To the latter was admeasured, in severalty, that portion of the land on which was Jackson’s actual residence and occupation, the part assigned to Twining containing a part of the land covered by Jackson’s color which is the locus in quo, but of which Jackson never had any actual possession, use or occupation. Jackson’s adverse possession continued, as against Twining’s former co-tenants, it is agreed, and barred them for so much as his grant covered, being within the portion allotted' to them in severalty ; and the question is, did his adverse possession continue, during the 7th year, for so much of the land covered by his color as lay within the portion assigned to Twining, in severalty, the actual residence of Jackson continuing, as before, beyond Twining’s boundary as fixed by the partition ?
The theory pertaining to the statute of limitations, as a harto personal actions, led the judgment of the Circuit Court, to wit, that when the statutory period has once begun, in favor of a defendant, it is not .suspended, or rebutted, by any intervening incident arising from the act of the plaintiff.
Can the test which establishes that rule, determine this question? We think not. As to that rule, we know the sole question is, when did the cause of action first accrue ? All else, *65 subsequent, is wholly irrespective of any act of the plaintiff; quiescence for the appropriate period completes the bar. But when the statutory period is interposed to defeat a title to land, put in action, it would be vain for a defendant to content himself with showing no more, than that his act of adverse possession began at a point of time prior to the action more than five, seven, or ten, years, as the case might be. He must show, moreover) that such adverse possession has been continued, consecutive, unbroken, for the requisite space of time, a period reckoned by years. It is something done by the defendant, not merely that which the plaintiff has left undone — his action, not merely the plaintiff’s torpidity, — that is to be considered. It is a certain sort of possession, by him, for a certain number of years, of another man’s land, which is to “ settle” his “ title to the possession in his estate,” according to the words of the Act of 1712 — which, by other words of the same statute, is to give him good right and title to the same, in fee simple, against all, except certain persons who are allowed a longer period to assert paramount title, according to prescribed circumstances. While, therefore, a dormant creditor from his mere laches, without more, loses his right of action, for that which he did not meantime possess, in reality or contemplation of law, and is refused legal means to collect his debt or damages, a defendant, in a real action, when protected' by adverse possession, must show that which enures, when demonstrated, to convey to him, by operation of law, the elder or paramount title’ to the land in question, as was observed in the case of King vs. Smith, Rice, 10.
A consideration to exhibit further the incompleteness of the test which has been applied to this case, is this: the first act of trespass is a cause of action accrued to the owner of the fee, yet if his action be brought more than four years after that act of. trespass he cannot recover damages for it, while he is not barred of an action against the same trespasser at any time before he is divested of his title, although the first cause of action may have been barred twice over so far as the recovery of damages may be concerned.
*66 We may conclude, therefore, that the test question for this case is, not when did the cause of action first accrue (as in ordinary cases under the general statute of limitations) — 'but whether the defendant (or any one whose title he has) gave cause of action to Twining for and during the term of seven years ? If so he must have held adversely to Twining during that whole term. Confessedly he did not, during the last year of it, by any actual adverse occupation, or use, of the locus in quo : his actual occupation for that year was in hostility to others, who may be virtually considered Twining’s alienees. If he had any adverse occupation, or possession, against Twining, for the 7th year, it was by virtue of his color of title (as we call it) and by nothing else ; and the case is to be determined by an inquiry into that.
A grant draws seizin in the grantee, or legal possession, of the whole. The beginning, or root, of adverse possession is the disseizin of the grantee. While that disseizin, or, ouster, was confined to the actual pedis possessio (as it has been called), or to the scope of the adverse use, there was less difficulty in ad-measuring the area which a disseizor had usurped. But the introduction of the adjunct, called color of title, has originated much difficulty. It was felt by our predecessors, as may be seen in Read vs. Eifert, 1 N. & McC. 374 (note.) From the disclosures of that case it would appear, an agricultural policy stimulated judicial views to extend the virtue and efficacy of the act of ouster. First this incident was made to include a proper proportion of wood-land, which rule, from an utter want of precision, was soon exploded, and the disseizor confined to his pedis possessio, as being that “possession” and “estate” wherein, by the Act of 1712, he was to be quieted. Read and Eifert, proceeding upon the like view of agricultural policy, enlarged the range of possession and estate, with which adverse use or occupancy should be held to invest a party, to the limits of a written instrument; and to that the said case confined him. Subsequent decisions have given the scope indicated by marked trees, or other notorious and definite limits and boundaries.
*67 Whatever definition we may adopt of-adverse possession, (and a full and complete one seems to have been suggested in Hawk vs. Senseman, 6 S. &. R. 21, to wit, that it must be “ an actual, visible, continued, notorious, distinct and hostile possession,”) it is manifest, that merely running round boundaries, though a trespass, is not adverse possession. It. is not disseizin. This last is found only in the act (and is limited by the scope of it) of actual use or occupancy. What sort of use or occupancy that may be, whether it may not consist in any one of various uses of land dependent upon the purpose for which the land may be most fit and that for which it may be held, need not now be discussed. Keeping in mind, however, that ouster or disseizin must be continuous, for the entire statutory period, that it pertains to any acre beyond the pedis possessio and within the boundary of the mere color of title, only by the constructive virtue that is allowed to the act and the place of ouster — it seems to follow that when the latter, for any year of the specified time, as well the last year as any other, is without the area of which the grantee is seized of title, the possession, for such period, is not adverse to him, (which is tested by the necessary element that he cannot sue,) — and hence, that for such period, constructive possession, never more than constructive, to the parcel, severed from that in actual adverse possession, falls, as the shadow would with the substance, or as the incident of interest would, upon the extinguishment of the principal that bore it.
As to the idea of disappointing the expectations of the adverse occupier, perhaps at the last moment of time which would ripen them into an indefeasible right, and that too by an act of the grantee, it is proper to observe, that up to the last moment of time he is a tort-feasor ; that until its expiration he could convey no right, nor assert any; that he might urge the same objection, in point of legal contemplation, if the severance between him and the owner of the fee took place the day after he took possession ; that there is no stringent reason to consider him an especial favorite of the law beyond the merits with which the *68 law has invested him. It is the unbroken continuance of the tortious occupation, as if of right, during the whole time, that gives sanctity, at the extreme end, to the fruit of it, according to the 2d sec. of the Act of 1712, and the construction of it borrowed from what is said in the preamble and 1st sec. of it, and the light derived from English jurisprudence in construing and applying a somewhat similar statute to ours, to wit, 21 Jas. 1, c. 16. In both countries, notwithstanding there appears to have been expressed only a naked prohibition of an action by the true owner of the land after a certain lapse of time, yet it was a dictate of common sense to hold, that, meantime, there must be an adversary to be sued, one .exposed to suit the whole time, especially when the policy of the bar with us'was, to sanctify the possession of such adversary and ripen it into title. Suppose during the 7th year of Jackson’s occupation, that is after the partition, Twining had sued him, would he not have defeated the action by showing that the title of the land on which he had committed and was continuing the ouster, was in others ? The case of Steedman vs. Hilliard, 3 Rich. 101, would have been apt for the purpose of maintaining such defence.
It is but fair, therefore, to-hold, that however politic the law may deem it to convert a certain description of possession into title and estate, though tortious, he who seeks the fruit of an usurpation, favorably regarded when properly continued, should bring himself fully and clearly within the requsitions which entitle him to the same.
The motion to set aside the non-suit is granted.
O’Neall, WaRdlaw, Fkost and Whitneh,, JJ., concurred.

Motion granted.